PEGRAM *v.* STATE.

[83 South. 741, In Banc. No. 21072.]

HIGHWAYS. *Members of board of supervisors not liable criminally for voting to pay contractor's claim.*

A member of the board of supervisors was not liable criminally for voting to pay the claim of a contractor for working the

roads, though he had not worked the roads in accordance with
the plans and specifications, where the supervisor did not act
fraudulently, corruptly or through bad faith, but under the
belief that the board had power to pay the claim at that time,
as he was acting judicially.

APPEAL from the circuit court of Tippah county.
HON. C. LEE CRUM, Judge.·
Samuel W. Pegram was convicted of an offense and
appeals.
The facts are fully stated in the opinion of the court.

*Thomas E. Pegram,* for appellant.

If any offense is charged by the indictment, or any
offense is shown to have been committed by the appel-
lant, it is of course, a statutory offense; and the state
seeks to punish the appellant for an alleged violation
of section 344 of the Code of 1906, or section 3717,
Hemingway's Code, section —, 112 Miss. 125.

The case of *Paxton* v. *Baum,* 59 Miss. 531, is prob-
ably more helpful in placing a proper construction on the
above section than any other decision of this court.
This decision was rendered on the law as embraced in
the Code of 1871 and since there have never been any
material modifications of that law by the legislature,
nor any different construction placed thereon by the
court, as to the civil or criminal liability of a member
of the board of supervisors, the construction of the
statute, having prevailed for more than forty years,
should still be the law in this state.

It is well to compare the sections of the Code of
1871, pertaining to the liability of a member of the
board of supervisors, to those sections of the Code
of 1906, on the same subject, and that is here done
Section 1386 of the Code of 1871 provided that, if the
board of supervisors should appropriate money to any
object not authorized by law, the members thereof

should become liable personally (civilly), etc., and this section has become and is now section 346 of the Code of 1906 with only slight change in phraseology and no change in substance or effect.

Section 1382 of the Code of 1871 is the same as section 343 of the Code of 1906 except that the latter section has in the course of time had added to it the provision that any illegal allowance may be inquired into by proper tribunal upon legal proceedings for that purpose.

Section 1379 of the Code of 1871 is identical with section 344 of the Code of 1906, which is the section on which the indictment in this case is founded. Each section provides that no person shall claim or receive any compensation not authorized by law, and that if any member of the board knowingly votes for the payment of any such unauthorized claim, or any appropriation not authorized by law, he shall be subject to indictment, etc.

In view of the fact that the legislature has never seen fit to amend these sections since the decision in the *Paxton case supra,* it is evident that the construction placed on the section by that decision has, all along met the approval of the law makers.

The construction gives the board of supervisors full jurisdiction of roads. The law under which the board of supervisors were working the roads of the district in question gave the supervisor from that district, since there was no road commissioner therefor, supervision of the roads of the district, that is, over the inspection of work done thereon, and the approval or disapproval of such work.

With the above constitutional and statutory provisions in mind the following questions, in the consideration of this case, naturally present themselves; is the claim of a contractor for work done by him on roads lawfully contracted, when approved by the supervisor whose

duty it is to inspect the work, a claim unauthorized by law, even though in the eyes of some other person, the work might not be up to contract? Is a member of the board of supervisors liable to indictment and prosecution for a violation of the criminal law in the event he should make a mistake as to whether a contractor has complied with his contract? Can a supervisor who has inspected the work done by a lawful contractor and recommended by implication, or actually the payment of the contractor's claim be held to have violated the criminal law where the proof fails to show that he actually voted for the allowance? Is it a violation of the criminal law of this state for a member of the board of supervisors to vote for the allowance of a claim compensating a contractor for work done on a lawfully let contract, when, in the judgment of such supervisor, the allowance is warranted by the facts, even though the work may not be up to the specifications of the contract? Is not the indictment in the case at bar defective in that it fails to aver that the appellant voted with corrupt and fraudulent intent?

In *Paxton* v. *Baum, supra,* the court said in response to the suggestion of error: "But we cannot ignore the fact that supervisors, in the discharge of many of their functions are judicial officers, and especially in adjudicating upon the validity of claims against the county. A law which would make them personally liable for every erroneous judgment rendered, if constitutional, would certainly have the effect of preventing any solvent man from accepting the office."

It might be added with equal force that a law which would make a member of the board liable to fine and imprisonment for every erroneous judgment,either as to law or fact, would certainly have the effect of preventing any self-respecting or liberty loving man from accepting the office.

It seems to be well settled that before a supervisor is subject to indictment and fine for his conduct or actions on matters within his jurisdiction, the indictment must charge and the proof must show beyond a reasonable doubt that the act was corruptly or fraudulently done. *State* v. *Baum,* 111 Miss. 31, 71 So. 50, 171 X, P, 35, p. 36; *Paxton* v. *Baum,* 59 Miss. 531; *Treen* v. *State,* 92 Miss. 756, 46 So. 252; *State* v. *Norris,* 111 N. C. 652, 16 S. E. 2; *State* v. *Kimball,* 43 Kan. 337, 23 Pac. 482; *State* v. *Skates,* 43 Kan. 330, 23 Pac. 479; *Henry* v. *Commonwealth,* 126 Ky. 103, — S. W. 37. It is true that the Paxton case was dealing more directly with section 1386 of the Code of 1871 than with section 1379, which is now section 344 of the Code of 1906, but the construction placed on the former in that decision is applicable to the latter. In both sections we find the same phrase, namely, "unauthorized by law," and what the phrase meant in one must be, necessarily, its meaning in the other, and the reasoning advanced by the court in that decision showing that a supervisor is not even civilly liable for a mistake in judgment, and is only liable when guilty of corrupt conduct only, is just as sound when the supervisor is sought to be held criminally liable.

*Spight & Street,* for appellant.

The appellant, S. W. Pegram, was tried and convicted in the circuit court of Tippah County, Mississippi, at the July Term, 1919 on an indictment charging him, as a member of the board of supervisors of said county, with having knowingly and unlawfully voted for an appropriation to pay a road contractor for work done on public roads in his supervisor's district, alleging that the said contractor had a valid contract to work said roads for a specified period. It will be noted that this indictment does not charge that said allow-

ance was· fraudulently and corruptly made, but only
that it was done "knowingly and unlawfully." This
allegation in the indictment would apply with equal
force to a case of mistaken judgment, which is really
the case at bar, and it˙ is fundamental law that no
judicial officer can be held criminally liable.for a mis-
take of judgment, especially where he is clothed with
discretionary powers, as is shown to be the case here.
The application for· the payment of this claim was
for a service rendered that county peculiarly within the
jurisdiction of the board of supervisors.

In the case of *Paxton* v. *Baum et al.*, 59 Miss. 531,
Chief Justice CHALMERS, in delivering the opinion of
the court overruling the suggestion of error, drew a
marked distinction betwen voting for an appropria-
tion corruptly made and one in which there was only
a mistake of judgment, and he held by clear inference
that inasmuch as. the declaration in this case did not
charge corruption, that question was not before the
court. If it is necessary to charge corruption in a
declaration in a civil action, how much greater the
necessity. in a criminal case? In that case a suit was
brought against members of the board of supervisors
on their bonds for having illegally allowed claims for .
work done on public roads in the county, and Judge
CAMPBELL, who delivered the opinion of the court very
clearly holds that the members of the board are not
liable personally because the appropriations were made
for objects authorized by law, and that it was not diver-
sion of public money to an object · not authorized
by law, and he uses this language: It is what the money
is appropriated to, and not how it is applied, that
furnishes a test of personal liability for it. Objects
signify the things aimed at, the end sought to be oc-
complished. If this is not the true interpretation of the
language mentioned, members of the board of super-

visors would be liable personally for every mistake or error of judgment, or of information as to facts whereby money was appropriated even to proper objects, if not appropriated in strict accordance with law as to every circumstance attending them." Proceeding further in the same opinion Judge Campbell says: "In view of the well-settled rule of the common law that for errors or mistakes, a public officer acting judicially or quasi-judicially is not liable, it could not have been the purpose of the legislature to make members or boards of supervisors personally liable for errors or mistakes as to how to act in matters committed to such boards by law and as to objects for which an appropriation of money authorized to be made by them. It is when they disregard the law as to the objects to which it has devoted public money and diverted it to some object to which the law has not devoted it, that personal liability attaches." Following this opinion of Judge Campbell, is the opinion of Chief Justice Chalmers holding, in effect, that only where the charge is made that the money was appropriated corruptly, can there be a personal liability. In the absence of such corrupt purpose in the allegations of the indictment, no offense against the laws or judgment should have been sustained in the lower court.

The law under which this indictment is drawn finds its only foundation in section 3717, Hemingway's Code, section 344 of the Code of 1906. That section provides a penalty upon a member of the board of supervisors who shall, "knowingly vote for the payment of any unauthorized claim, or appropriation not authorized by law." According to the opinion in Paxton v. Baum, supra, the case at bar does not fall within the condemnation of that section of law. This is another reason why the motion in arrest of judgment should have been sustained.

*N. T. Currie,* Assistant Attorney-General, for the State.

We submit that there is no escape, under law, for this appellant, upon the theory, as contended by his counsel that the appellant had official discretion, that he had a right to use that discretion in any manner he saw fit, and that if he used it in an unlawful manner, in an unlawful purpose, that he cannot be held criminally responsible for it. We deny that such is the law. On the contrary, we assert that wherever a public officer is imbued with discretion and the right of the exercise of discretion, and in exercising and using it, instead of exercising and using it honestly, and in good faith, on the contrary wilfully, corruptly, knowingly and originally missued and abused it as did the appellant in this case, and in so doing, commits a violation of the criminal laws of the state, as did the appellant in this case, he is answerable criminally.

The case of *Paxton et al.* v. *Baum et al.,* reported n 59 Miss. 531, and cited by counsel for the appellant in their brief, is not applicable to the case at bar, and is not in point as an authority, for the reason that it was decided upon section or paragraph 1386 of the Code of 1871, which we quote:

"If any board of supervisors shall appropriate any money to any object, not authorized by law, the members of such board shall be liable personally, for such sum of money to be recovered, by suit, in the name of their successors in office, or in the name of any person who is a tax payer, who will sue for the use of the board of supervisors of their county, and who shall be liable for costs in such case, but any member of the board of supervisors may be discharged from liability in such suit, by plea and proof that he voted against such unauthorized appropriation of money."

It is observed at a glance that the thing prohibited by this section was the appropriation of money by the

board of supervisors to an object not authorized by law.

Section or paragraph 1386 of the Code of 1871, which controlled the decision of the court in the Baum case, refers to the appropriation of money to an object not authorized by law. Such is not the case at bar.

Section 344 of the Mississippi Code of 1906, in which the appellant is being prosecuted, pertains to an entirely different subject. It pertains to and prohibits any person from claiming from the board of supervisors any fee or compensation not authorized by law, and prohibits the board from knowingly voting for the payment of any such claim unauthorized by law.

Thus it is clear that the provisions of section or paragraph 1386 of the Code of 1871, prohibits the appropriation of any money to any object not authorized by law, and section 344 of the Mississippi Code of 1906, prohibits any person from claiming and receiving from the board of supervisors of a county any fee or compensation not authorized by law, and prohibits the board of supervisors from knowingly voting for the payment of any such claim unauthorized by law, making it clear beyond dispute that the objects of the two statutes are entirely separate and distinct, the one, the Act of 1871, prohibiting the appropriation of money by the board of supervisors to any object not authorized by law, and the other the Act of 1906, that is, section 344, prohibiting the claiming receiving or paying of an unauthorized claim, that is, such a claim as is not really just, due and owing, or which might properly be claimed and voted for and paid if just, due and owing.

The word, "appropriate" means more than mere payment; it means in the first instance to set apart for, to provide for, to create for, to make provisions for; for ample, such an act as by ordinance of the board, taking money from a fund provided for one

special object or appropriation and applying it to some other object and appropriation, although both objects and appropriations might be within. the jurisdiction of the board of supervisors, thus, such as by ordinance taking money from the jail or court house fund and appropriating it to a bridge or public highway fund.

This argument is borne out by the fact that there appears in the Code of 1906, section 346, which is in substance the same as section 1386 of the Code of 1871, by which the decision of the court in the Baum case was controlled, creating a civil liability of the board for the misappropriation of funds, such as hereinbefore illustrated.

The distinction between the two statutes, we think must be clear, and when the distinction is drawn, it becomes very apparent that the decision of the court in the Baum case is no authority in the case. at bar.

The language of the indictment follows the language of the statute itself, and is sufficient. The statute, itself, declares in what the fraud and corruption aimed at and prohibited by it, shall consist, viz: the knowingly voting for the allowance of an unauthorized claim, meaning simply this, that it is a violation of the law for a member of the board of supervisors to vote for the allowance of a claim to be paid out of the public trust funds, knowing at the time that the claim it* not due, is not just and is not owed dollar for dollar. To demonstrate that this is true and is exactly and precisely what the statute means and what the legislature intended it to mean, we call the court's attention to the following sections, all of which necessarily will be considered together.

First, we call the court's attention to section 311 of the Mississippi Code of 1906 and section 3684 of Vol. 11. Hemingway's annotated Mississippi Code 1917, which says: "A person having a just claim against any county shall first present the same to the board of

supervisors thereof for allowance; and, if the board shall refuse to allow it, may appeal from the judgment of the board to the circuit court or may bring suit against the county; and, either case if such person recover judgment, the board of supervisors shall allow the same, and a warrant shall be issued therfor.''

Next, we call the court's attention to section 341 of the Mississippi Code 1906 and section 3714, Vol. 11, Hemingway's Annottated Mississippi Code 1917, which reads as follows: ''All demands and accounts against the county shall be audited and allowed or rejected, on due proof, in term time; and any demand or account allowed by the board, in whole or in part shall be filed and preserved by the clerk, and numbered to correspond with the warrant to be issued therefor, and the order allowing such claim shall be entered on the minutes, specifying the name of the claimant, the amount allowed, the page and particular section of the law under which such allowance is made, and on what account and the clerk shall issue a warrant on the county treasurer, under the seal of his office in favor of the claimant.''

Next we call the court's attention to section 343, Mississippi Code 1906, and section 3716 of Hemingway's Annotated Mississippi Code 1917, Vol. 11, which reads as follows: ''It shall be unlawful for the board of supervisors to allow a greater sum for any account, claim, or demand against the county than the amount actually due thereon, dollar for dollar, according to the legal or ordinray cash compensation for such services rendered or for salaries or fees of officers, or materials furnished, or to issue county warrants or orders upon such accounts, claims or demands, when allowed for more than the actual amount so allowed, dollar for dollar; and any illegal allowance by such board may be inquired into by the proper tribunal,

upon legal proceedings for that purpose whenever such matter may come into question in any case.''

Then follows section 344 of the Mississippi Code 1906 and section 3717, Vol. 11, Hemingway's Annotated Mississippi Code 1917, which renders criminal the doing of the things prohibited in the previous sections, that is, section 343 of the Mississippi Code of 1906 and section 3716 of the Hemingway's Annotated Mississippi Code 1917, Vol. 11, and a consideration of these two sections together render clear the meaning of the words ''not authorized by law'' as used in section 344 of the Mississsippi Code of 1906, and section 3717, Hemingway'sAnnotated Mississippi Code 1917, under which the appellant is prosecuted, and these words mean exactly and precisely what the language of section 343 of the Code of Mississippi 1906 and section 3716, Hemingway's Annotated Mississippi Code 1917, Vol. 11, says: ''It shall be unlawful for the board of supervisors to allow a greated sum for any account, claim, or demand against the county than the amount actually due thereon, dollar for dollar, according to the legal or ordinary amount of compensation for such services rendered of for salaries or fees of officers, or materials furnished or to issue county warrants or orders upon such accounts, claims or demands, when allowed for more than the actual amount so allowed, dollar for dollar.'' ·

Now, what is the complaint against the appellant in this case? It is that he knowingly voted for the allowance and payment of a claim which was not due, dollar for dollar, under the terms and conditions of the contract upon which the services claimed for had been rendered, or rather were to be rendered, because the proof in the case shows that the services, as a matter of fact, had not been rendered, the admission of the appellant, himself, is that he knew at the time that the work had not been done according to the contract.

Therefore he knew that the claim was not due dollar for dollar, and knowing this, voted for its allowance and payment and this is the case of the state against him.

SYKES, J., delivered the opinion of the court.

The appellant was indicted for knowingly voting for the payment of an alleged unauthorized claim while a member of the board of supervisors of Tippah county under section 344, Code of 1906, section 3717, Hemingway's Code. The indictment practically follows the language of this section of the Code. At the conclusion of the introduction of the testimony for the state, the defendant made a motion to exclude same and for the court to instruct the jury to find the defendant not guilty because the indictment charged no offense and the proof in the case did not show that the defendant was guilty of any offense. This motion was overruled, and the defendant excepted to the action of the court. At the conclusion of the testimony introduced by the defendant this motion was again renewed and overruled by the court. The jury found the defendant guilty, and he was sentenced to pay a fine by the court from which judgment this appeal is prosecuted.

It is strenously insisted upon this appeal that the indictment charges no offense that the use of the word "knowingly" in the indictment is not sufficient, but that the indictment should have also charged that the defendant fraudulently and corruptly voted for the payment of the alleged unauthorized claim.

It is unnecessary for us to decide as to the sufficiency of the indictment because the case must be reversed upon the facts. The gist of the testimony for the state is to the effect that the claim was unauthorized because the road contractor, in whose favor the claim was made, had not worked the roads in accordance with the

plans and specifications when this payment of thirty-three and one-third per cent. of the contract price was voted for by the defendant, who as a member of the board of supervisors from this supervisor's district was also in charge of the working of the public roads in his district. The defendant before this claim was made had inspected the roads and made out the claim for the contractor, filed it, and had it allowed by the board. In the plans and specifications under which this road contract was let it is provided that: "All roads are to be the width specified in specifications unless in the judgment of the supervisor it would be impractical in some places. A—1 roads are to be twenty-two feet in width, with eighteen-inch crown, unless considered impracticable by the supervisor."

Without narrating in detail the testimony of the state suffice it to say that several witnesses testified that at the time his claim was voted and paid the road had not been worked by the contractor in accordance with the plans and specifications; that in some places it was too narrow; that the ditches were not properly cleaned out and the bridges had not all been repaired; that the road was rough and there were some holes in it. On the plans and specifications under which the roads here in question were let to the contractor was the proviso that the roads were to be fourteen and sixteen feet in width, unless considered impractiable by the supervisor. The uncontradicted testimony in the case shows that, before this claim was allowed by the board the contractor had about five days on it; that this was during very dry weather, and it was very hard to work the road at that time. The defendant testified that before the claim was allowed, as it was his duty to do, he inspected this road, and that he approved the work done by the contractor. He was then asked this question:

121 Miss.—37.

"Did you in your judgment think that it was good enough to warrant you to issue that warrant? A. Yes, sir; I knew that the road was not according to the contract and he must come back as soon as the ground got in order to make it wider.

"Q. How many places was that road narrow? A. I don't recollect. The ground was so hard that he could not work it. He came back in May and made it wider.

"Q. With reference to the bridges and the holes in the road? A. Bedding the road up it made it dry and hard and made the bumps, and I told him to wait until it rained and then grade it. I told him it was going to be rough till the clods were broken up and it had been traveled on. That is why the road was rough because it was very hard and dry. Last March it did not rain any, and the road was dry and hard. The place where they spoke of there it was impracticable to make it wide enough, and it was so hard that it was killing his mules to do that. It was made wider after that."

There was no testimony whatever introduced from which the jury would have been justified in believing that the defendant in voting for the claim did so fraudulently or corruptly or through any bad faith. The testimony, taken most strongly for the state, only shows that the defendant in knowingly voting for this claim either did so through error or mistake of judgment. There is no testimony to show that the defendant in voting for the claim acted dishonestly. In fact, the testimony shows that he believed the board of supervisors had the power to pay this claim at that time. He was acting judicially.

In the case of *Paxton* v. *Baum*, 59 Miss. 531, in the opinion in chief on page 537 this court said:

"But, in view of the well-settled rule of the common law that for errors or mistakes a public officer acting judicially or quasi judicially is not liable, it could not

have been the purpose of the legislature to make members of boards of supervisors personally liable for errors or mistakes as to how to act in matters committed to such boards by law, and as to objects for which an appropriation of money is authorized to be made by them.''

Again on page 539 in the opinion in response to the suggestion of error it is stated:

''Judicial officers of all grades are liable for their corrupt judgments. . . . But we cannot ignore the fact that supervisors, in the discharge of many of their functions, are judicial officers, and especially so in adjudicating upon the validity of claims against the county. A law which would make them personally liable for every erroneous judgment rendered, if constitutional, would certainly have the effect of preventing any solvent man from accepting the office, or of becoming the surety of those who did.''

And more especially is this true if they are criminally liable for mistakes or errors of judgment in matters within their jurisdiction. This opinion concludes as follows:

''Manifestly, it is impossible, after we pass the point of corruption, to draw any line other than that laid down by us, namely, liability where the subject-matter of the appropriation is beyond the jurisdiction of the board; nonliability where the object is within the jurisdiction, but there has been a mistaken exercise of legal power. Within this limit, every case must depend upon its own facts.''

In the case of *State* v. *Green*, 111 Miss. 32, 71 So. 171, Green as county superintendent of education and the surety on his bond were sued in the chancery court for failure of this officer to perform certain duties of his office. A demurrer was sustained and the bill dismissed. In affirming the decree of the lower court, on page 35

of 111. Miss., on page 172 of 71 So., in the opinion it is stated:

"But for errors of judgment and discretion, in the absence of fraud, he is not liable on his official bond or otherwise."

The opinion concludes as follows: "In view of the fact, therefore, that the work paid for by the superintendent and the several alleged irregularities were within the jurisdiction of his office and no corruption is charged, the bill fails to state a cause of action."

The working of the public roads is peculiarly within the jurisdiction of the board of supervisors, and in voting for the payment of this claim the defendant could only be criminally liable for fraudulently or corruptly voting for an unauthorized claim. The proof in this case fails to show that his conduct was either fraudulent or corrupt. The court erred in not instructing the jury to find the defendant not guilty.

The judgment of the lower court is reversed, and the defendant discharged.

*Reversed, and defendant discharged.*